866 P.2d 869

**STATE of Arizona, Appellant,**

v.

**Isaac EVANS, Appellee.**

**No. CR–92–0228–PR.**

Supreme Court of Arizona.

Jan. 13, 1994.

Richard M. Romley, Maricopa County Atty. by Gerald R. Grant, Deputy County Atty., Phoenix, for appellant State.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellee Evans.

## OPINION

ZLAKET, Justice.

The court of appeals, with one judge dissenting, held that the trial court abused its discretion in granting defendant's motion to suppress. *State v. Evans,* 172 Ariz. 314, 836 P.2d 1024 (Ct.App.1992). We disagree and vacate the appellate court's opinion.

Defendant was stopped for a traffic violation on January 5, 1991. At the time, he had a suspended driver's license. Neither of these offenses, however, precipitated his eventual arrest. The police officer testified at the suppression hearing that he would not have placed defendant under arrest if a computerized records check had not indicated the existence of an outstanding misdemeanor arrest warrant in his name.

While making the arrest, the officer found part of a marijuana cigarette on defendant's person. A subsequent search of his vehicle revealed a bag of marijuana hidden under the passenger seat. Defendant was charged with possession, a class 6 felony.

The computerized record was in error. In fact, the arrest warrant had been quashed by the issuing justice court several weeks earlier. For some reason, it was not expunged from the computer. At the suppression hearing, there was conflicting evidence concerning whether this mistake was caused by the court staff or law enforcement employees. The trial court apparently concluded that it made little difference who was at fault. Relying on *State v. Greene,* 162 Ariz. 383, 783 P.2d 829 (Ct.App.1989), which applied the exclusionary rule where police personnel were negligent in maintaining computer records, the judge granted defendant's motion to suppress the evidence seized during the arrest. Thereafter, the state dismissed the charges without prejudice and brought this appeal.

The court of appeals ruled that the evidence should not have been suppressed. The majority concluded that *Greene* did not apply because the mistake here, more probably than not, was made by justice court employees instead of law enforcement personnel. The appeals court relied primarily on *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) and *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3430, 82

L.Ed.2d 677 (1984) in holding that "the exclusionary rule is intended to deter police misconduct and not to punish errors of judges and magistrates," and therefore should not have been utilized in this case. 172 Ariz. at 317, 836 P.2d at 1027.[1]

◼ We do not agree that the trial court abused its discretion under the facts presented. We are unable to follow the lead of the court of appeals in dismissing conflicting inferences raised by evidence on the issue of whether fault rested with the justice court, the police, or both. *See id.* at 316 n. 1, 836 P.2d at 1026 n. 1. Testimony at the suppression hearing failed to clearly establish whether a telephone call from the court to the police, advising that the warrant had been quashed, was made but not entered in the record, or was never made at all. The trial judge was concerned about this gap in the proof, as evidenced by his questions during the hearing. He ultimately made no express finding with respect to responsibility for the error, apparently concluding that it did not matter. But even assuming, as did the appellate court majority, that responsibility for the error rested with the justice court, it does not follow that the exclusionary rule should be inapplicable to these facts.

*Tucker* is of little value here. In that case, the court was dealing with alleged violations of the 5th, 6th and 14th amendments arising from the failure of police to have given "Miranda warnings" as part of an interrogation that antedated the decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Leon* is also not helpful. There, officers obtained evidence on the basis of a facially valid search warrant issued by a neutral magistrate. The warrant was later held invalid because it had been issued on an insufficient showing of probable cause. Such a situation is distinguishable from one like this, where no warrant at all was in existence at the time of the arrest. *See State v. Peterson,*

171 Ariz. 333, 830 P.2d 854 (Ct.App.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 465, 121 L.Ed.2d 373 (1992); *see also* 1 Wayne R. LaFave, *Search and Seizure* § 1.3(g) at 77 (1986). This warrantless arrest, based entirely as it was on an erroneous computer entry, was plainly illegal.

◼ The state argues that the police could have arrested defendant for various traffic violations, and this inevitably would have resulted in the discovery of the contraband. The record clearly establishes, however, that no arrest would have occurred in the absence of the flawed computer record. At most, defendant would have received a traffic citation.

◼ The "good faith" analysis advanced by the state is of questionable application here. This case is not about the motives of the police. The fact that the arresting officer acted in good faith is irrelevant. 2 Wayne R. LaFave, *Search and Seizure* § 3.5(d) at 24 (1986); *see also People v. Fields,* 785 P.2d 611 (Colo.1990). The arrest was not the result of "a reasonable judgmental error" concerning facts which might constitute probable cause. A.R.S. § 13–3925(C)(1). It was the result of negligent record keeping. Whether the *erroneous computer record* was the fault of police or justice court personnel should be of no consequence even though, as we have noted, evidence on this point was by no means as clear as the state now suggests.

This is also not a case involving a mere "technical violation." A.R.S. § 13–3925(C)(2). Defendant was arrested on the basis of a nonexistent warrant, not one that was "later invalidated due to a good faith mistake." *Id. See also United States v. Whiting,* 781 F.2d 692 (9th Cir.1986) (summarily rejecting extension of *Leon's* good faith exception to warrantless searches).

We cannot support the distinction drawn by the court of appeals and the dissent between clerical errors committed by law enforcement personnel and similar mistakes by court employees. We are concerned here

---

1. It is unnecessary to analyze here the purposes to be served by the exclusionary rule. We note only that deterrence of police misconduct is but one of the reasons that have been advanced in

support of its use. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961); *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914).

with the performance of purely ministerial functions, not the exercise of judicial discretion. While it may be inappropriate to invoke the exclusionary rule where a magistrate has issued a facially valid warrant (a discretionary judicial function) based on an erroneous evaluation of the facts, the law, or both, *Leon,* 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984), it is useful and proper to do so where negligent record keeping (a purely clerical function) results in an unlawful arrest. Such an application will hopefully serve to improve the efficiency of those who keep records in our criminal justice system.

■ The dissent laments the "high costs" of the exclusionary rule, and suggests that its application here is "purposeless" and provides "no offsetting benefits." Such an assertion ignores the fact that arrest warrants result in a denial of human liberty, and are therefore among the most important of legal documents. It is repugnant to the principles of a free society that a person should ever be taken into police custody because of a computer error precipitated by government carelessness. As automation increasingly invades modern life, the potential for Orwellian mischief grows. Under such circumstances, the exclusionary rule is a "cost" we cannot afford to be without.[2]

Even assuming that deterrence is the principal reason for application of the exclusionary rule, we disagree with the court of appeals that such a purpose would not be served where carelessness by a court clerk results in an unlawful arrest. It also seems to us an anomalous rule, indeed, that would prohibit the use of evidence illegally seized pursuant to the clerical error of a police department clerk, but would permit it if the same mistake was made instead by a court clerk.

We hold that the trial judge did not abuse his discretion, and we vacate the court of appeals' opinion.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN, J., concur.

MARTONE, Justice, dissenting.

The court concludes that "[w]hether the erroneous computer record was the fault of police or justice court personnel should be of no consequence...." *Ante,* at 203, 866 P.2d at 871. Thus today the court holds that the exclusionary rule serves to deter judicial error as well as police misconduct. This proposition is directly contrary to *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Because I cannot agree with the court's expansion of the exclusionary rule, I dissent.

The court assumes that the exclusionary rule applies to all unlawful searches. It does not. The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1972). Its application "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *State v. Atwood,* 171 Ariz. 576, 667, 832 P.2d 593, 684 (1992), quoting *Calandra,* 414 U.S. at 348, 94 S.Ct. at 620. Specifically, "the rule's primary purpose is to deter future *unlawful police conduct* and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Calandra,* 414 U.S. at 347, 94 S.Ct. at 619–20 (emphasis added). Thus the range of application of the exclusionary rule is narrower than the range of unlawful searches.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984), the Court

---

**2.** In fact, the evidence suggests that this cost is insubstantial. As one commentator notes, "[t]o date, the most careful and balanced assessment of all available empirical data shows 'that the general level of the rule's effects on criminal prosecutions is marginal at most.'" 1 Wayne R. LaFave, *Search and Seizure* § 1.3(c) at 52 (1986) (quoting T. Davies, *A Hard Look at What We Know (and Still Need to Learn) About the "Costs"* of the Exclusionary Rule: The NIJ Study and Other Studies of "Lost" Arrests, 1983 Am.B.Found.Research J. 611, 622); *see also* Peter F. Nardulli, *The Societal Cost of the Exclusionary Rule: An Empirical Assessment,* 1983 Am.B.Found.Research J. 585, 606–07; Peter F. Nardulli, *The Societal Costs of the Exclusionary Rule Revisited,* 1987 U.Ill.L.Rev. 223, 238–39.

considered whether the exclusionary rule served to deter judicial as well as police misconduct. In concluding that it did not, the Court stated:

> Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion thus cannot be expected significantly to deter them. Imposition of the exclusionary sanction is not necessary meaningfully to inform judicial officers of their errors, and we cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment, encourage them to repeat their mistakes, or lead to the granting of all colorable warrant requests.

*Leon,* 468 U.S. at 917, 104 S.Ct. at 3417–18. The Court held the exclusionary rule inapplicable when police officers act in objectively reasonable good faith on a warrant later invalidated due to judicial error because "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921, 104 S.Ct. at 3419.

This case falls squarely within the rule of *Leon.* The police officer who stopped defendant found an outstanding warrant for defendant's arrest when he ran a customary computer check. He arrested defendant and found marijuana during the search incident to the arrest. The computer gave no indication that the warrant was invalid. The evidence suggests that a justice court clerk failed to contact police department employees to inform them that the warrant had in fact been quashed. The police department was not responsible for the error. The officer arrested defendant in good faith on a facially valid warrant. Indeed, not even the court suggests that the police officer could have done anything other than arrest the defendant. It would have been misfeasance to ignore the warrant.

The court believes that *Leon* is distinguishable because the officers in *Leon* relied on a facially valid warrant while here "no warrant at all was in existence at the time of the arrest." *Ante,* at 203, 866 P.2d at 871. But the officer relied upon facially valid computer information. When the computer shows an outstanding arrest warrant, the officer is expected to make an arrest. He is in the same position as one who holds an arrest warrant in his hand. It makes no difference whether, after issuance, a warrant is quashed or otherwise invalid. In both cases the warrant is without effect, yet it appears to the officer to be facially valid. In either case, *Leon* controls.

The court also concludes that applying the exclusionary rule is proper here because a court employee, and not a judge, committed error. But what does it matter? The exclusionary rule applies to *police* misconduct, not *judicial* department error.

Finally, the court concludes that the police cannot advance a "good faith" argument because the arrest was not a "reasonable judgmental error" as defined in A.R.S. § 13–3925. Section 13–3925 is wholly inapplicable to this case. It expressly addresses the exclusion of evidence "because of the *conduct of a peace officer* in obtaining the evidence." A.R.S. § 13–3925(A) (emphasis added). Here, the conduct of the arresting officer is not challenged. Moreover, § 13–3925 was added to the criminal code in 1982 to provide a statutory good faith exception to the exclusionary rule. The United States Supreme Court sanctioned the good faith exception in 1984 when it decided *Leon.* After *Leon,* we held "that the exclusionary rule to be applied as a matter of state law is no broader than the federal rule." *State v. Bolt,* 142 Ariz. 260, 269, 689 P.2d 519, 528 (1984). Because our exclusionary rule cannot be narrower than the federal rule, and because we have held it to be no broader, we do not read into § 13–3925(A) that which is not required by the federal rule.

*Leon* requires us to determine who is responsible for error before applying the exclusionary rule. This is true for errors on

police car computers.[1] Both divisions of our court of appeals recognize that the exclusionary rule is properly limited to police misconduct.[2] Today's decision, holding that the source of error is irrelevant, is a major departure from state and federal law. If it is not clear whether the police or court employees were responsible for the error, we should remand for findings on this issue. We cannot conclude that a dispositive issue is irrelevant.

To be sure, we should like to minimize computer error.[3] But the way to do this is through education, training and rigorous standards. We limit the exclusionary rule to police misconduct because its costs are so high. "[H]ighly probative and often conclusive evidence of a criminal defendant's guilt is withheld from the trier of fact." *Duckworth v. Eagan*, 492 U.S. 195, 208, 109 S.Ct. 2875, 2882, 106 L.Ed.2d 166 (1989) (O'Connor, J., concurring). Its purposeless application defeats the truthfinding process, frees the guilty, and generates disrespect for the law and the administration of justice with no offsetting benefits. *Atwood*, 171 Ariz. at 667, 832 P.2d at 684.

I, too, am concerned with the loss of "human liberty." *Ante*, at 204, 866 P.2d at 872. But the exclusionary rule will not restore liberty to the innocent and should not restore it to the guilty. I dissent.

---

1. For example, the Appellate Court of Illinois decided a case very similar to the one we decide today. *See People v. Joseph*, 128 Ill.App.3d 668, 83 Ill.Dec. 883, 470 N.E.2d 1303 (1984). However, the computer error at issue in *Joseph* was caused by the police department. The court held that the exclusionary rule was proper because "[t]he situation in the instant case reflects a matter within the responsibility and control of police authorities who failed to update their records to accurately reflect defendant's current status." *Id.*, 83 Ill.Dec. at 886, 470 N.E.2d at 1306.

2. In *State v. Peterson*, 171 Ariz. 333, 830 P.2d 854, our court of appeals, Division 1, held that the exclusionary rule was a proper remedy to deter computer error when "[a]ny mistake was that of the police." *Id.* at 340, 830 P.2d at 861.

Division 2 also decided the exclusionary rule was properly applied to suppress evidence found incident to an arrest caused by computer error if the error was caused by the police. *State v. Greene*, 162 Ariz. 383, 783 P.2d 829 (App.1989). The court stated, "[i]f police misconduct, whether it be negligent or deliberate, caused or contributed to the arrest notation being in the computer system, the police department would be responsible for not keeping its computer entries up to date." *Id.* at 384, 783 P.2d at 830. Thus the divisions are not in conflict on this issue.

3. Today we deal with computer error, not intentional misconduct. That "mischief," *ante*, at 204, 866 P.2d at 872, is far more likely to be deterred by the threat of a civil action for damages than by the exclusion of evidence.